IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CHELSEA E. LINDSEY PLAINTIFF

v. Civil No. 3:14-cv-3093-MEF

CAROLYN W. COLVIN, Commissioner
Social Security Administration DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Chelsea Lindsey, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 1382. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I. Procedural Background:**

Plaintiff filed her applications for SSI on February 13, 2012, alleging a disability onset date of August 4, 2009, due to difficulty concentrating, a learning disability, generalized anxiety disorder, reading and mathematics disorder, borderline intellectual functioning ("BIF"), academic problems, attention deficit hyperactivity disorder ("ADHD"), global assessment of functioning ("GAF") scores of 50 to 53, depression, and somatization disorder. Tr. 125, 130, 133-134, 149-

150, 176, 184. The Commissioner denied her applications initially and on reconsideration. Tr. 58-59. An Administrative Law Judge ("ALJ") held an administrative hearing on December 6, 2012. Tr. 26-57. Plaintiff was present and represented by counsel.

At this time, she was 20 years old with a high school education. Tr. 29-30. She had no past relevant work ("PRW") experience. Tr. 20, 125, 151-160.

On May 31, 2013, the ALJ found that the Plaintiff's BIF and anxiety were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 14-16. After partially discrediting her subjective complaints, the ALJ determined that she retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> Can do work where interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote, with few variables and little judgment required. Supervision required is simple, direct, and concrete.

Tr. 16. With the assistance of a vocational expert, the ALJ found the Plaintiff could perform work as a housekeeper, machine tender, and inspector. Tr. 21.

The Appeals Council denied the Plaintiff's request for review on August 12, 2014. Tr. 1-4. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 9, 10.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

**II. Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. 20 C.F.R. § 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. 20 C.F.R. § 416.920(a)(4)(v).

**III. <u>Discussion</u>:**

Of particular concern to the undersigned is the ALJ's failure to fully develop the record as to the Plaintiff's mental limitations and RFC. The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). The ALJ should recontact a treating physician if a critical issue is undeveloped or underdeveloped. *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010). Further, the ALJ is required to order examinations and tests when the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled. *Id*.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 416.945 (2014). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The record reveals that the Plaintiff suffers from BIF, learning disabilities, and anxiety. The school identified her learning disabilities in the first grade, resulting in her repeating the second grade. She required a highly structured learning environment and was unable to learn and maintain basic academic skills at the same rate as non-disabled peers. Tr. 252. Her high school records reveal she was enrolled in special education classes for English and math, and received significant "modifications" in her remaining classes. Tr. 44, 250, 252-266. The Plaintiff can read, but has difficulty comprehending what she has read. Tr. 46. Further, she can count, but cannot make change. Tr. 45. She did graduate high school and attempted remedial classes at a community college, but was unsuccessful. Tr. 44, 54-55.

While in high school, the Plaintiff was a cheerleader. Tr. 36-37. However, her aunt, a teacher at the school, was in charge of selecting the squad. Tr. 43-44. It appears her aunt selected her because the squad needed someone of her small build to place at the top of the pyramid. Although the Plaintiff worked hard to learn the routines, it was very difficult for her. They often excluded her from dance routines due to her inability to perform on the same level as the other girls, and her teammates frequently teased her. Tr. 44.

The Plaintiff's reported activities included caring for the family pet, caring for her personal hygiene, preparing simple meals, making her bed, doing the laundry, vacuuming, dusting, loading and unloading the dishwasher, watching television, attending church, and going out every other weekend with her friend. Tr. 35. However, both she and her mother testified that she required constant grooming reminders and a list of chores to perform each day. Tr. 50, 52. Even so, the chores had to be redone. Her mother testified that the Plaintiff often folded and put away wet clothing. Further, she had only one friend with whom she associated.

Although the Plaintiff did obtain her driver's license, she did so on her fourth try and under somewhat questionable circumstances. Tr. 35. She drove alone on only occasion and was involved in an accident. Tr. 41-42, 143. As a result, she no longer drives. Tr. 143, 166.

Records also reveal that the Plaintiff is highly impressionable and naïve. She enjoys the attention of her peers, but is unable to differentiate the bad from the good. This is evidenced by a history of associating with peers of questionable character and exchanging inappropriate pictures with boys she does not know. Tr. 47-48. As a result, her parents moved to a new school district and no longer allow her to have either a cell phone or a Facebook account. Tr. 46-48.

In 2009 and 2010, Dr. Charles Nichols examined the Plaintiff on at least three occasions, due to the school's suspicion of mental retardation and emotional disorder. Tr. 267, 293, 285-318. Intellectual testing in February 2009 revealed a full scare IQ of 63 with a verbal IQ of 70 and a performance IQ of 59. Due to concerns that her anxiety may have affected the validity of the test results, repeat testing in April 2009 revealed a verbal IQ of 61, a nonverbal IQ of 66, and a composite IQ of 56. Her nonverbal score increased to 81 in 2010, but her composite score of 67 and verbal score of 63 remained consistent with prior tests. Her memory also proved deficient. In addition, academic testing revealed significant deficits in mathematics and reading.

Input from the Plaintiff's algebra teacher documented slow recognition of words when reading, difficulty predicting outcomes, an inability to remember and follow sequences of calculation steps, and an inability to write an organized paragraph without grammatical errors. Her English teacher noted similar issues including slow recognition of works and poor prediction of outcomes as well as an inability to write organized paragraphs with good grammar. Other areas of deficit included weak vocabulary and weak reading comprehension skills, evidenced by her struggle to understand and interpret the meaning of passages she has read. Behaviorally, her

teachers reported perfectionism to the point of making herself ill, extreme fear of making mistakes leading to avoidance of activities, anxiety, frustration, distractibility, a short attention span, and gullibility.

Dr. Nichols diagnosed generalized anxiety disorder, reading disorder, mathematics disorder, and BIF with a global assessment of functioning ("GAF") score[1] of 50-53.[2] He voiced no concerns regarding malingering, noting that her "current test scores likely provide an accurate estimate of her functioning."

On April 10, 2012, Dr. Nancy Bunting conducted a mental status exam at the request of the Administration. Tr. 348-353. The Plaintiff was reportedly taking Zoloft to treat anxiety. Although she denied inpatient psychiatric hospitalizations, she participated in weekly outpatient counseling while in school. Dr. Bunting administered IQ tests and the scores obtained were consistent with the scores observed by Dr. Nichols. However, Dr. Bunting concluded that the Plaintiff was malingering. Her opinion was largely based on the Plaintiff's alleged ability to shop alone for clothing and toiletries, wash dishes, do laundry, clean, sweep, cook, vacuum, care for the family dog, watch television, listen to the radio and music, play games on her iPod, read Twilight books, attend church, interact with friends, and participate as a cheerleader in school.

---

[1] We recognize that the DSM–V was released in 2013, replacing the DSM–IV. The DSM–V has abolished the use of GAF scores to "rate an individual's level of functioning because of 'its conceptual lack of clarity' and 'questionable psychometrics in routine practice.'" *Alcott v. Colvin*, No. 4:13–CV–01074–NKL, 2014 WL 4660364, at *6 (W.D. Mo. Sept. 17, 2014) (citing *Rayford v. Shinseki*, 2013 WL 3153981, at *1 n. 2 (Vet.App.2013) (quoting the DSM–V)). However, because the DSM–IV was in use at the time the medical assessments were conducted in this case, the Global Assessment of Functioning scores remain relevant for consideration in this appeal. *Rayford*, 2013 WL 3153981, at *1 n. 2.

[2] A GAF score between 50 and 53 is indicative of serious to moderate difficulty in social, occupational, or school functioning. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000).

On April 17, 2012, Dr. Winston Brown reviewed the Plaintiff's medical records and concluded she would have moderate limitations in the following areas: carrying out detailed instructions, maintaining attention and concentration for extended periods, sustaining an ordinary routine without special supervision, completing a normal workday or workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, responding appropriate to changes in work setting, setting realistic goals, and making plans independently of others. Tr. 358-376.

After reviewing the record, the undersigned finds that remand is necessary to allow the ALJ to obtain an RFC assessment from Dr. Nichols. It appears the ALJ gave significant weight to the non-examining assessment of Dr. Brown and the one-time evaluation of Dr. Bunting. However, we find that the overall record does not support their observations. Dr. Bunting concluded that the Plaintiff was malingering after only one interview. Interestingly, Dr. Nichols interviewed the Plaintiff on three separate occasions and never mentioned the possibility of malingering. Instead, he found her test scores to be reliable. Further, Dr. Bunting interviewed only the Plaintiff without the benefit of the Plaintiff's educational records. Dr. Nichols, on the other hand, had input from the Plaintiff, her mother, and her teachers, allowing him to provide a more thorough evaluation. Unfortunately, Dr. Nichols was not asked to complete a mental RFC assessment. And, without such an assessment, it is not clear how the Plaintiff's impairments affect her work-related abilities. Accordingly, on remand, the ALJ is ordered to recontact Dr. Nichols and ask that he perform an updated mental status evaluation and complete a mental RFC assessment.

## IV. Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 9th day of December, 2015.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE